IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

---------------------------------------------------------X
:
PITNEY BOWES, INC.                    :    3:05 CV 1455 (JBA)
:
:
V.                                    :
:
KERN INTERNATIONAL, INC.              :    DATE: NOV. 30, 2006
:
---------------------------------------------------------X

RULING ON PLAINTIFF'S MOTION TO COMPEL AND FOR SANCTIONS

Plaintiff Pitney Bowes, Inc. commenced this litigation on September 15, 2005 against defendant Kern International, Inc. ["KII"], alleging patent infringement of United States Letters Patent No. 5,083,769, entitled "Dual Collating Machine" ["'769 Patent"]. (Dkt. #1). On April 28, 2006, defendant filed its Answer, Affirmative Defenses and Counterclaims (Dkt. #41), to which plaintiff filed its Answer and Reply on May 18, 2006. (Dkts. ##43-44).

On August 16, 2006, plaintiff filed the pending Motion to Compel Production of Certain Technical Drawings and for Sanctions and brief and affidavit in support.[1] (Dkts. ##53-55). Defendant filed its brief in opposition on September 11, 2006[2] (Dkt. #57), and

---

[1] Attached to plaintiff's brief in support (Dkt. #54) are the following ten exhibits: copy of Plaintiff's Second Request for Production of Documents and Things (11-51), dated March 1, 2006 (Exh. A); affidavit of David J. Silva, sworn to August 16, 2006 (Exh. B; see also Dkt. #55); copy of defendant's Answer and Counterclaims, dated April 28, 2006 (Exh. C); copy of defendant's Corporate Disclosure Statement, dated October 21, 2005 (Exh. D); copy of Declaration of Thomas Brock in Support of Kern's Motion to Dismiss or Transfer, sworn to November 10, 2005 (Exh. E); copies of correspondence between counsel, dated August 2 & 7, 2006 (Exhs. F-G); copy of Company Lookup Reports, printed November 8, 2002 (Exh. H); and copies of correspondence between the parties, dated November 18, 2002 & December 16, 2002 (Exhs. I-J).

[2] Attached to defendant's brief in opposition is a Declaration of Thomas Brock, sworn to September 11, 2006 ["Brock Decl."] (Dkt. #57-2); copies of case law; copies of nine photographs; and copy of e-mail correspondence, dated August 10, 2006 ["Brock Decl. Exh. 1"].

plaintiff filed its reply brief fourteen days later.[3] (Dkt. #58). On October 3, 2006, United States District Judge Janet Bond Arterton referred this case to this Magistrate Judge for purposes of supervising discovery. (Dkt. #59). On November 14, 2006, this Magistrate Judge filed an Order (Dkt. #66), requiring certain documents designated as "confidential" by defendant be submitted to the Magistrate Judge for her in camera review; such documents were received on November 21, 2006 ["Confidential Documents"].

Under the latest scheduling order, all fact discovery is to be completed by November 30, 2006 and all expert discovery is to be completed by July 20, 2007. (Dkts. ##63-64).[4]

For the reasons stated below, plaintiff's Motion to Compel and for Sanctions (Dkt. #53) is granted in limited part and denied in large part.

## I. PROCEDURAL BACKGROUND

On March 1, 2006, plaintiff served its Second Set of Production Requests on defendant. (See Dkt. #54, Exh. A). In Production Request No. 11, plaintiff seeks:

> [a]ll documents and things concerning or otherwise relating to the design, development, construction and manufacture of any and all input modules or other document mail finishing equipment sold, distributed, leased, rented or offered for sale by Kern that includes or otherwise incorporates a double-deck collator or double-deck grouping station, including without limitation, the Kern 970 Single Sheet Feeder and/or the Kern 971 Single Sheet Feeder.

Defendant provided responsive documents but did not include a "complete set of design, construction and manufacturing drawings for the Kern 970 Single Sheet Feeder and the Kern 971 Single Sheet Feeder." (Dkt. #54, at 3-4). On July 27, 2006, pursuant to a request

---

[3]Attached to plaintiff's reply brief is a copy of the '769 Patent (Exh. A) and copies of promotional literature for the Kern 971 and 970 Single Sheet Feeder and photographs (Exh. B).

[4]Yesterday, plaintiff filed a Motion for Modification of Scheduling Order (Dkt. #67), to expand the scope of discovery and to extend the deadline for the completion of expert discovery until August 20, 2007.

under FED. R. CIV. P. 34, plaintiff's litigation counsel, its in-house counsel, and its expert witness inspected the K970 and K971 modules at defendant's premises in Columbus, Ohio. (Dkt. #54, at 4; Dkt. #57, at 2). Defendant's employees operated the modules and plaintiff was permitted to manipulate the machines so that a complete inspection could be made. (Dkt. #57, at 2-3). Additionally, plaintiff digitally photographed and videotaped the entire inspection with the assistance of a professional photographer. (Id. at 3 & Exh. B). According to plaintiff, during this visit, plaintiff's counsel "reiterated [their] request to counsel for KII that KII produce a complete set of design, construction and manufacturing drawings for the accused devices." (Dkt. #54, at 4). Defense counsel informed plaintiff that the drawings were in the possession of Kern AG ["KAG"], KII's foreign parent (Id. at 1, 4). In a letter dated August 2, 2006, plaintiff's counsel again renewed their request that KII supplement its response to Production Request No. 11 (see Dkt. #54, Exh. F), to which KII responded five days later that it does not have control over the technical drawings and KAG has not provided technical drawings that KII previously requested. (See id., Exh. G).

## II.  DISCUSSION

In this pending Motion, plaintiff seeks an order compelling defendant to comply with Production Request No. 11 of Plaintiff's Second Request for Production of Documents and Things (11-51), with respect to certain technical drawings. (Dkts. ##53-54). Both parties agree that the "critical" issue before the Court is whether defendant KII has "control" over the documents sought, within the meaning of Rule 34, in that such documents are now in the possession of its foreign parent, KAG. (See Dkt. #54, at 5; Dkt. #57, at 2, 7-8).

Plaintiff contends that the term "control" is construed broadly under Rule 34 and it is the "nature of the relationship" between the party over which the court has jurisdiction and

3

the non-party with possession of the documents that will determine whether production should be ordered. (Dkt. #54, at 5-6). Plaintiff posits that there is a "close corporate relationship between KII and KAG" (id. at 7-8); KII is the exclusive U.S. distributor and a service agent for KAG's products (id. at 8-9); and KAG is the true stakeholder of this lawsuit (id. at 10-11). Further, plaintiff argues that because KAG has been willing to provide documents to KII in support of its defense of this lawsuit, but is not willing to provide documents responsive to plaintiff's requests, KII should be precluded from using the documents provided by KAG in support of its defense. (Id. at 11). Finally, plaintiff seeks monetary sanctions against defendant. (Id. at 12).

Defendant objects to the production of these technical drawings on two grounds: first, the allegations in this lawsuit will be decided by comparing the claims of plaintiff's asserted patent against defendant's K970 and K971 machines it inspected, and not against technical drawings; and second, defendant does not have "control" of the documents plaintiff seeks because they are possessed by defendant's parent corporation, KAG, and KAG refuses to provide them to defendant in the ordinary course of business. (Dkt. #57, at 1-6). Specifically, defendant contends that the manufacturing and construction documents are not "crucial documents" necessary for resolving plaintiff's claims of infringement as infringement is determined by comparing a properly construed patent against the accused device. (Id. at 6-7). Moreover, whether a subsidiary has "control" over documents possessed by a parent or a related corporation is a very fact specific inquiry and defendant does not have "control" over the KAG technical documents that plaintiff seeks because it has no right or ability to access the documents in the ordinary course of business; defendant's and KAG's actual business structures and operations refute plaintiff's claim that KII and KAG have a "close

corporate relationship"; the fact that KII is a sales and service agent subsidiary for its parent company does not automatically establish "control"; and whether KAG is the "true stakeholder of the lawsuit" does not establish control. (Id. at 8-15). Additionally, defendant counters that sanctions are not warranted as its objection is "substantially justified" in light of the factually specific issue of determining whether a subsidiary has "control" over documents. (Id. at 15).

In response to defendant's objection, plaintiff argues that the complexity of the accused devices did not permit a complete review of their internal structure during the equipment inspection since "many of the internal structural features . . . could not be clearly viewed, photographed, videotaped or studied by [plaintiff]." (Dkt. #58, at 3). Plaintiff asserts that Ulrich Kern[5] and KAG participate in the day to day operations of KII, thus evidencing the close relationship between KII and KAG (id. at 3-6), and defendant's concerns over the confidentiality of these documents should be alleviated by the protective order entered by this Court on February 8, 2006. (Id. at 6). Moreover, plaintiff reiterates that KAG has provided technical documents to KII for its defense but will not provide these requested documents; KII is indeed in control of these documents; and KII should be precluded from using documents provided by KAG in support of its defense. (Id. at 6-10).

A. RELEVANCE

As stated above, defendant disputes plaintiff's argument that the technical design, manufacturing, and construction drawings for the K970 and K971 are "crucial documents," in that in patent cases, infringement is determined by comparing a properly construed patent claim against the accused device. (Dkt. #57, at 6-7).

---

[5]Ulrich Kern is an owner of KAG, a corporate officer of both KII and KAG, and is the "owner, chairman [and] CEO of all the . . . Kern companies." (Dkt. #54, at 7 & Exh. H).

"Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." F̲ED̲. R. C̲IV̲. P. 26(b)(1). Relevance "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)(citation omitted). The party receiving a request must not only produce information which is admissible as evidence, but also information which "appears reasonably calculated to lead to the discovery of admissible evidence." Martin v. Valley Nat'l Bank of Arizona, 140 F.R.D. 291, 300 (S.D.N.Y. 1991)(citations omitted). "Reasonably calculated" in Rule 26 means "any possibility that the information sought may be relevant to the subject matter of the action." Morse/Diesel, Inc. v. Fidelity & Deposit Co. of Maryland, 122 F.R.D. 447, 449 (S.D.N.Y. 1988)(citations & internal quotation marks omitted). Thus, to the extent that plaintiff seeks to obtain technical drawings related to defendant's accused machines, those requests are relevant and while defendant urges that plaintiff had an ample opportunity to inspect, photograph and videotape the accused K970 and K971 products, defendant does not dispute the relevance of the technical drawings. (See Dkt. #58, at 1; Dkt. #57, at 2-3). "Indeed, the technical specifications in drawings related to [defendant's machines]– the accused devices at issue in the case– [are] not only directly and highly relevant, but indeed are critical to the infringement claims asserted in the case." Cornell Research Found., Inc. v. Hewlett Packard Co., 223 F.R.D. 55, 74 (N.D.N.Y. 2003).

B. DEFENDANT'S "CONTROL" OVER THE REQUESTED DOCUMENTS

Rule 34 of the Federal Rules of Civil Procedure reads, in relevant part:

> (a) **Scope.** Any party may serve on any other party a request (1) to produce and permit the party making the request, or someone acting on the requestor's behalf, to inspect and copy, any designated documents (including

writings, drawings, graphs, charts, photographs . . .), or to inspect and copy, test, or sample any tangible things which constitute or contain matters within the scope of Rule 26(b) and which are in the possession, custody or control of the party upon whom the request is served . . . . .

    (b) **Procedure.**
    . . .

    A party who produces documents for inspection shall produce them as they are kept in the usual course of business . . . . .

    (c) **Persons Not Parties.** A person not a party to the action may be compelled to produce documents and things or to submit to an inspection as provided in Rule 45.

The word "control" under Rule 34 is "broadly construed" such that a "party controls documents that it has the right, authority, or ability to obtain upon demand." Scott v. Arex, Inc., 124 F.R.D. 39, 41 (D. Conn. 1989)(citations omitted). It is plaintiff's burden to establish that the documents are in defendant's "control." See Glaxo Inc. v. Boehringer Ingelheim Corp., 40 U.S.P.Q.2d 1848, 1850 (D. Conn. 1996). The determination of whether defendant KII has "control" over the documents sought by plaintiff is a "very fact specific" inquiry. Playboy Entm't Group, Inc. v. U.S., No. CIV. A. 96-94-JJF, 1997 WL 873550, at *3 (D. Del. Dec. 11, 1997). While "the particular form of the corporate relationship does not govern whether a party controls documents," Afros S.P.A. v. Krauss-Maffei Corp., 113 F.R.D. 127, 131 (D. Del. 1986)(emphasis in original), the "nature of the transactional relationship between the subsidiary and parent . . . is pivotal." Addamax Corp v. Open Software Found., Inc., 148 F.R.D. 462, 467 (D. Mass. 1993).

Within the Second Circuit, courts "go beyond defining 'control' as the legal right of the [requested] party to obtain the documents and include an inquiry into the practical ability of the [requested] party to obtain these documents." Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc., 233 F.R.D. 143, 145 (D. Del. 2005)(emphasis in original)(citation

omitted).  In this case, the fact that the documents are held in a foreign country by a non-party does not bar their discovery, although discovery "permitted to be obtained from non-parties may be more limited in some circumstances." Addamax, 148 F.R.D. at 468(multiple citations omitted).

Specifically, where the litigating corporation is the subsidiary and the parent corporation is in possession of the requested documents, courts have found control to exist on the following <u>alternate</u> grounds:

> 1) the alter ego doctrine which warrant[s] "piercing the corporate veil";[6]
>
> 2) the subsidiary was an agent of the parent in the transaction giving rise to the lawsuit;
>
> 3) the relationship is such that the agent-subsidiary can secure documents of the principal-parent to meet its own business needs and documents helpful for use in litigation;
>
> 4) there is access to documents when the need arises in the ordinary course of business; and
>
> 5) subsidiary was marketer and servicer of parent's product . . . in the United States.

Camden Iron & Metal, Inc. v. Marubeni Am. Corp., 138 F.R.D 438, 421-22 (D.N.J. 1991) (citation omitted & footnote added).[7]  Thus, "in parent/subsidiary situations, the determination of control turns upon whether the intracorporate relationship establishes some

---

[6] Rule 34(a) "does not require plaintiff to demonstrate an alter ego relationship in order to show" that KII "controls" the requested documents that are possessed by KAG. Camden Iron & Metal, Inc. v. Marubeni Am. Corp., 138 F.R.D 438, 422 (D.N.J. 1991).

The "tests for determining whether a corporate entity is the alter ego or a 'mere department' of another, are distinct from the issue of whether a parent has legal or practical access to its subsidiary's documents." In re Ski Train Fire of November 11, 2000 Kaprun Austria, No. MDL 1428 (SAS), 2006 WL 1328259, at *6 (S.D.N.Y. May 16, 2006).

[7] The second test is not relevant here.

legal right, authority or ability to obtain the requested documents on demand." Id. at 422 (emphasis in original). Moreover, courts consider "the degree of ownership and control exercised by the parent over the subsidiary, a showing that the two entities operated as one, demonstrated access to documents in the ordinary course of business, and an agency relationship." Id.

### 1. FIRST AND FIFTH TESTS OF CAMDEN IRON & METAL DECISION

KII is a wholly owned subsidiary of KAG and operates as the exclusive seller of KAG products in the United States. (Dkt. #54, at 7 & Exh. H). According to plaintiff, there is a "close corporate relationship between KII and KAG"; the owner of KAG, Ulrich Kern, is also a corporate officer of KII; and KII and KAG "work together closely in marketing activities conducted in the United States." (Dkt. #53, at 7-8; Dkt. #58, at 4-5).

In response, defendant asserts that KII and KAG maintain separate corporate operations, and that although Ulrich Kern is the owner, President, and CEO of both companies, neither he nor any other employee serves as a member of both companies' management teams or executive boards. (Dkt. #57, at 4, 11-12; compare Dkt. #54, Exh. H). Defendant also points out that while KAG creates marketing materials for all of its distributors, KII is responsible for purchasing the materials from KAG if it so desires. (Dkt. #57, at 11). Defendant has characterized plaintiff's arguments as "not supported by evidence or law." (Dkt. #57, at 10-11).

In United States Int'l Trade Comm. v. ASAT, Inc., 411 F.3d 245, 255 (D.D.C. 2005), the D.C. Court of Appeals acknowledged that it would be "impracticable" to hold that "all wholly owned subsidiaries engaged in sales and servicing" were "controlling their parent company's documents." 411 F.3d at 255. Rather, "there must be a nexus between the [documents sought] and [the party's] relationship with its parent companies, taking into

account, among other things, [the party's] business responsibilities." Id.

In looking at the first and fifth tests in the Camden Iron & Metal decision, which focus on the corporate interrelationship between the parent and subsidiary, there is no overlap between executives of KII and KAG, with the exception of Ulrich Kern (Dkt. #54, Exh. H), and the North American Management Team at KII does not include any employees of KAG. (Dkt. #57, Brock Decl., ¶¶ 11-12). KII does not distribute KAG equipment solely, but also distributes equipment and software manufactured by at least five other companies; similarly, KAG relies on independent dealerships other than KII, in Germany, England, France, Spain and Russia. (Id., ¶¶ 8, 14).  Moreover, Thomas Brock, KII's Secretary General, General Manager and Vice President, avers that KII has never produced, manufactured or distributed any of the products accused of infringement with the expectation that they would be used in Connecticut.  (Dkt. #54, Exh. E, ¶ 10).  Rather, KII purchases mail finishing machines, including the K970 and K971, from KAG and resells them to KII customers in the United States, and KII provides its North American customers with routine service and upkeep on the KAG machines it sells.  (Dkt. #57, Brock Decl., ¶¶ 17, 20).  Additionally, according to Brock, all of KAG's research and development occurs in Switzerland, and KAG manufactures and assembles the K970 and K971, and all of the other modular machine components that can be used with a K970 or K971, in Switzerland.  (Id., ¶¶ 6-7).  Brock also has averred that KII attends trade shows for the United States market, and that KAG only participates with KII in a trade show held every four years in Chicago because that trade shows "draws an international audience."  (Id., ¶ 19).  Defendant's arguments are supported by the Confidential Documents submitted for this Magistrate Judge's in camera review.  (See Dkt.

#66).[8] Thus, these two tests weigh in favor of defendant's position.

### 2.  THIRD AND FOURTH TESTS OF CAMDEN IRON & METAL DECISION

The parties do not dispute that the documents sought are not in KII's possession or custody but rather are in the possession or custody of KAG.  The third and fourth tests of the Camden Iron & Metal decision focus upon access to the parent corporation's documents by the defendant-subsidiary. Here, plaintiff asserts that upon request, KII has received documents from KAG including technical drawings, for use in support of KII's defense to this patent infringement suit, and in response to customer inquiries.  (Dkt. #54, at 9-10, 11; Dkt. #58, at 6-7, 9-10).  Plaintiff further contends that KII has already produced four sheets of technical drawings created by KAG in response to plaintiff's production requests, and that KAG has attached a technical drawing via email, to be provided to a U.S. customer of KII. (Id.).

Thomas Brock, however, avers that to the contrary, KII purchases operator's manuals and parts catalogs relating to the KAG machines it sells, so that KII can perform routine maintenance services to its customers that purchase KAG machines; only if a customer has a part that is not listed in a KAG parts manual, will KAG provide a part number, and sometimes a drawing to KII, so that the KII technicians can identify the part again.  (Dkt. #57, Brock Decl., ¶¶ 21-23).  According to Brock, KAG has "always refused to provide KII" with "technical construction drawings" because "such drawings are critical to KAG's research, development, and manufacture of KAG machines, and disclosing them to subsidiaries and distributors who do not need them to carry out their business operations would unnecessarily risk the core of KAG's business." (Id., ¶¶ 25-26;  see Dkt. #57, at 5, 9-10). The Confidential

---

[8] See, e.g.,Tab 1; Tab 3; Tab 5; Tab 6; Tab 7; Tab 8; Tab 11; Tab 13; and Tab 14.

Documents reviewed in camera support Brock's affidavit.[9]

Further, defendant KII urges this Court to reject plaintiff's argument that "because [KAG] has provided some drawings to KII . . . during the ordinary course of business" that it has access to the documents sought in this Motion. (Dkt. #57, at 10, n.4). Defendant is correct that the fact that KAG may share "some documents during the ordinary course of business is insufficient to deem [defendant] as having control over the documents underlying the patents at issue." ASAT, 411 F.3d at 255 (citation omitted). Additionally, KAG has made clear that the design, manufacture, or construction drawings of KAG machines are "very sensitive and confidential [and] [i]t has never been and will never be the policy of [KAG] to provide such documents and information[ ] for [its] subsidiaries and distributors." (Dkt. #57, Brock Decl., Exh. 1). According to plaintiff, as the "exclusive U.S. distributor and a service agent for KAG equipment," KII works with KAG equipment everyday "and it is unimaginable that KII would not have access to these documents and the ability to obtain them for its usual business activities." (Dkt. #54, at 9). Defendant in this case, like the defendant in Cooper Indus., Inc. v. British Aerospace, Inc., 102 F.R.D. 918, 919 (S.D.N.Y. 1984), sells and services the products to which the documents relate. However, in that case, the court noted that documents presumed to be in a subsidiary's control are those documents and records that a corporation "requires" in the normal course of its business. Id. at 920, n.2.

In this case, defendant urges that the requested documents are confidential and are not required by KII in its ordinary course of business and, in the absence of these technical drawings, KII has still been able to sell and service KAG equipment. (Dkt. #57, at 14). Moreover, as discussed above, Thomas Brock avers that while KII has received documents

---

[9]See, e.g., Tab 9, Tab 10, Tab 12, and Tab 15.

and photographs identifying part numbers for key parts of KAG machines and providing detailed instructions on how to operate the machines for routine maintenance, KII has requested various technical construction drawings from KAG to assist in servicing KII customers and KAG has "always refused to provide KII such drawings" because "such drawings are critical to KAG's research, development, and manufacture of KAG machines, and disclosing them to subsidiaries and distributors who do not need them to carry out their business operations would unnecessarily risk the core of KAG's business." (Dkt. #57, Brock Decl., ¶¶ 21-22, 25-26).

In light of the foregoing, plaintiff has not satisfied its burden of establishing that the documents are in the "control" of KII, as plaintiff has not offered evidence that these documents are necessary to the business of KII or that the requested documents are produced in the normal course of its business. See Glaxo, 40 U.S.P.Q.2d at 1850. Because plaintiff has not demonstrated defendant's "ability to easily obtain [the requested documents, specifically, the technical design, manufacture, or construction drawings,] when it [is] in their interest to do so," this factor does not weigh in favor of production of these documents from KAG. Addamax, 148 F.R.D. at 466 (citation omitted); see also Afros S.P.A., 113 F.R.D. at 132 (when a parent has provided documents to a subsidiary at the request of the subsidiary, it demonstrates that the requested items are within the subsidiary's reach and the intercorporate relationship balances in favor of finding that the subsidiary has control of the requested documents). Therefore, these two tests of the Camden Iron & Metal decision also indicate that KII did not have control over KAG's technical drawings.

### C.  TRUE STAKEHOLDER OF LAWSUIT

Lastly, plaintiff posits that KAG is the true stakeholder of this lawsuit as "[n]otably, a response to [plaintiff's] letter [informing defendant of the infringement,] was not sent by KII,

but . . . was sent by KAG," and when the parties attempted to resolve this dispute prior to commencing legal action, it was KAG that was involved. (Dkt. #54, at 10-11 & Exh. J). According to defendant, whether KAG is the true stakeholder of this lawsuit does not establish control as such contention includes the "assum[ption] that KII will buy additional K970 or K971 units from [KAG] between now and the date the patent-in-suit expires." (Dkt. #57, at 14).

"If a non-party will directly receive the benefit of an award, then it is unjust that it can frustrate the discovery process and the complete resolution of the issues by refusing to furnish documents in its possession." Afros S.P.A., 113 F.R.D. at 131. However, because this factor, "along with others must be weighed in determining control for purposes of Rule 34," id., this factor, alone, does not establish KII's control over the documents possessed by KAG.

D.  PRECLUSION

In addition to compelling KII to disclose the requested documents, plaintiff seeks an order precluding defendant from using the documents provided by KAG in support of its defense of this lawsuit. (Dkt. #54, at 11). To the extent that defendant KII intends to rely upon any of these KAG documents in defense of this lawsuit, it shall produce copies, if it has not done so already, subject to the Protective Order, **on or before December 8, 2006**.[10]

III. CONCLUSION

For the reasons stated above, plaintiff's Motion to Compel and for Sanctions (Dkt. #54) is granted to the limited extent set forth in Section II.D supra and denied to the extent set forth in Sections II.B & C supra.

---

[10] Plaintiff also seeks an award of sanctions to cover the reasonable expenses incurred in making its motion, including attorney's costs and fees. (Dkt. #54, at 12). In light of the conclusion reached in this ruling, this request is denied.

This is not a Recommended Ruling but a Ruling on discovery, the standard of review of which is specified in 28 U.S.C. § 636; Fed. R. Civ. P. 6(a), 6(e) & 72; and Rule 72.2 of the Local Rules for United States Magistrate Judges.  As such, it is an order of the Court unless reversed or modified by the District Judge upon timely made objection.

Because this ruling is subject to review, see 28 U.S.C. § 636(b)**(written objections to ruling must be filed within ten days after service of same);** Fed. R. Civ. P. 6(a), 6(e) & 72; Rule 72.2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; Small v. Secretary, H&HS, 892 F.2d. 15, 16 (2d Cir. 1989)**(failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit)**, the Confidential Documents shall remain in this Magistrate Judge's Chambers unless and until requested by Judge Arterton, and when appropriate, will be returned to defense counsel**.**

Dated at New Haven, Connecticut, this 30th day of November, 2006.

_____/s/_____
Joan Glazer Margolis
United States Magistrate Judge